[Civ. No. 34604.   Second Dist., Div. Two.   Sept. 16, 1969.]

HARVEY KEITH SMITH, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Joseph A. Ball and Douglas Dalton for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Real Party in Interest.

ALARCON, J. pro tem.*—The petitioner, Harvey Keith Smith, has applied to this court for a writ of mandate to compel the respondent Superior Court of Los Angeles to vacate its order denying the petitioner's motion for a change of venue and to issue a new order granting a change of venue.

## FACTUAL BACKGROUND

On December 28, 1967, the petitioner, Harvey Keith Smith, was indicted by the Los Angeles County Grand Jury. He is charged with five counts of bribery in violation of Penal Code section 67½[1] and five counts of perjury in violation of Penal Code section 118.[2] The petitioner filed a motion for a change of venue in the trial court pursuant to Penal Code section 1033.[3] Attached to the written motion for a change of venue were 275 exhibits consisting of newspaper clippings containing articles concerning the grand jury investigation of the Los Angeles Harbor Department and the indictment of petitioner. An evidentiary hearing on the motion for change of venue was held on March 20, 1969, and March 26, 1969. Testimony was presented to the court and exhibits 275-A through 290 were introduced into evidence. The trial court denied the motion for a change of venue. The trial judge found that while "the community had been deluged and saturated with news reporting of these various harbor cases" and with

---

*Assigned by the Chairman of the Judicial Council.

[1]Penal Code section 67½ provides as follows: "Every person who gives or offers as a bribe to any ministerial officer, employee, or appointee of the State of California, county or city therein or political subdivision thereof, any thing the theft of which would be petty theft is guilty of a misdemeanor; if the theft of the thing so given or offered would be grand theft the offense is a felony."

[2]Penal Code section 118 provides as follows: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which such testimony, declarations, depositions, or certification is permitted by law under penalty of perjury and wilfully states as true any material matter which he knows to be false, is guilty of perjury."

[3]Penal Code section 1033 provides as follows: "A criminal action pending in a superior court may be removed from the court in which it is pending on application of the defendant, on the ground that a fair and impartial trial cannot be had in the county. This chapter does not apply to actions pending in other courts."

"extensive pretrial publicity" concerning the criminal charges against the petitioner, Harvey Keith Smith, there was no "reasonable likelihood that this defendant cannot secure a fair and impartial trial in Los Angeles."

Prior to announcing his ruling, the trial judge orally reviewed the evidence and the applicable authorities. In so doing he indicated that his decision was based on the affidavits of two deputy district attorneys submitted in opposition to the motion for a change of venue. These affidavits allege that in the *voir dire* examination of the jurors in "the cases against Mr. Starr and Mr. Rundberg and Mr. Watson" who were also indicted by the grand jury on related charges, only one of the prospective jurors had a preconceived opinion as to the guilt or innocence of the parties involved. It is further alleged in these affidavits that in the opinion of the two prosecutors "there appears to be present no reasonable likelihood that in the absence of relief requested by the defendant herein, that a fair trial cannot be had." The trial judge concluded from these affidavits "that with such considerable publicity in the newspapers covering the other cases, Starr, Rundberg, and Watson, if the jurors in those cases had indicated they had no specifie recollection, or the majority of the jurors, that the same would probably be true as far as Mr. Keith Smith is concerned."

The case of *Maine* v. *Superior Court*, 68 Cal.2d 375 [66 Cal.Rptr. 724, 438 P.2d 372] provides the test which must be applied by a trial judge and a reviewing appellate court to determine if a change of venue must be granted in a criminal case where it is alleged that pervasive pretrial publicity will prevent a fair trial.

A motion for a change of venue must be granted whenever it is determined that because of the dissemination of potentially prejudicial news "there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had." (*Maine* v. *Superior Court*, 68 Cal.2d 375, 383 [66 Cal.Rptr. 724, 438 P.2d 372].)

The *Maine* case also teaches us that an appellate court must in reviewing a denial of a motion to change venue on a petition for a writ of mandate, satisfy itself de novo on the basis of all the exhibits and affidavits that the petitioner can obtain a fair and impartial trial. (*Maine* v. *Superior Court*, *supra*, 68 Cal.2d 375, 382.)

We have made an independent evaluation of all the exhibits and affidavits submitted to us. We have concluded

that a fair trial cannot be had in Los Angeles County because of the pervasive publicity which has "deluged" Los Angeles County concerning this case.

The petitioner, Harvey Keith Smith, is accused of bribing public officials and of lying to the grand jury concerning his corrupt criminal behavior. These accusations are extremely serious and if true have far reaching consequences since they involve a betrayal of public trust by persons who lack integrity and good character. If believed, these charges neces-. sarily evoke public indignation and outrage. In this case the charges against the petitioner, Harvey Keith Smith, resulted in massive news coverage which increased rather than slackened up to the time the supplement to the petition for a writ of mandate was filed in this court. The reasons for the news interest in this matter are manifold.

1. *The Investigation By The Los Angeles Times.*

The investigation of the alleged bribery which resulted in the indictment against the petitioners was commenced by reporters of the Los Angeles Times. In its final report for 1967, the grand jury acknowledged the newspaper's efforts toward correcting government improprieties and for making its information available to the grand jury. (Final Report, 1967 Grand Jury Los Angeles County, p. 43.) The results of the investigation of the Los Angeles Harbor Department conducted by reporters for the Los Angeles Times were first published by that newspaper on October 18, 1967. The circulation of the Los Angeles Times as of September 30, 1968, was 948,782 on week days, and 1,253,556 on Sundays. The Los Angeles Times continued its coverage on an almost daily basis up to the time the petition was filed before this court.

2. *The Controversy Between The Mayor And The Los Angeles Times.*

The revelations made by the Los Angeles Times precipitated sensational charges and countercharges between Mayor Samuel Yorty and the Los Angeles Times as to the accuracy of the news stories and the mayor's responsibility for the appointment of incorruptible city commissioners. These exchanges received widespread news and editorial coverage in various Los Angeles newspapers, including the Los Angeles Times.

3. *The Los Angeles Mayoral Race of 1969.*

Mayor Yorty was a candidate for reelection in 1969. The election date was May 27, 1969, which was six days before this

matter was set for trial prior to the issuance of the alternative writ of mandate on May 29, 1969.

The election race was highly publicized and involved bitter exchanges in the news media between the opposing candidates. The mayor's opponent used as a campaign issue the alleged "crooked dealings" of the mayor's "cronies" who were serving on city commissions. The petitioner was an appointee of the mayor on the city human relations commission. The Los Angeles Times endorsed the candidacy of the mayor's opponent and editorialized on April 28, 1969, May 4, 1969, and May 5, 1969, against the mayor, citing as a campaign issue the indictment of the petitioner on corruption charges.

4. *The Pulitzer Prize Publicity.*

On May 5, 1969, the day after the petition for a writ of mandate was filed in this court, the Los Angeles Times reported that it had been awarded the Pulitzer Prize for its exposé of "the misuse of powers by certain members of Los Angeles city government." This news article referred to the pending trial against the petitioner. In addition to the May 6, 1969, news story concerning the Pulitzer award, the Los Angeles Times ran a full page advertisement listing the various honors won by the newspaper and various staff members. Listed among these accomplishments was the newspaper's investigation which preceded the petitioner's indictment.

We are convinced from a review of the several hundred exhibits that the news media coverage of this matter has been so pervasive that there is a reasonable likelihood that the petitioner cannot get a fair trial in Los Angeles County. As in the *Main* case, *supra*, this case has become a cause célèbre in local politics. The charges against the petitioner have also been the basis of an acrimonious public controversy between the mayor and the newspaper with the largest circulation in Los Angeles County. The news reporting of this matter has created national interest which culminated in the award of the Pulitzer Prize to the newspaper which apparently precipitated the grand jury investigation which led to the petitioner's indictment.

The trial judge in denying the motion for a change of venue indicated that his review of the hundreds of newspaper articles submitted to him in support of the motion convinced him that Los Angeles County had been deluged and saturated with extensive pretrial publicity. However, since all but one of the prospective jurors questioned during the trial of Mr. Starr, Mr. Rundberg, and Mr. Watson indicated they were

not prejudiced against *Mr. Starr, Mr. Rundberg*, and *Mr. Watson* by the pretrial publicity, the trial judge concluded that petitioner could also receive a fair trial in Los Angeles County. The trial court's conclusion that since the fairness of the trials of Starr, Watson, and Rundberg were not affected by pretrial publicity, therefore the prospective jurors in the trial of the petitioner, Harvey Keith Smith, will not be prejudiced against him because of the massive news media coverage this case has received is logically unsound for the following reasons:

1. The *voir dire* of the jurors in the cases against Starr, Rundberg, and Watson concerned the possible prejudice caused by the publicity concerning the defendants on trial. The jurors in the Starr, Rundberg, and Watson cases were not questioned as to whether they would be able to give the petitioner, Harvey Keith Smith, a fair trial since he was not on trial.

2. The extent of newspaper coverage given to the Starr, Rundberg, and Watson cases differed from that devoted to the charges against the petitioner, Harvey Keith Smith. The pretrial publicity concerning Mr. Starr, Mr. Rundberg, and Mr. Watson ended with their trials in 1968, prior to the massive newspaper publicity concerning the charges against the petitioner, Harvey Keith Smith, published during the 1969 election campaign for the office of Mayor of the City of Los Angeles. The exhibits before this court show that the newspaper publicity concerning the charges against the petitioner, Harvey Keith Smith, has continued to May 7, 1969.

The real party in interest asks this court to distinguish the *Maine* case for the following reasons:

1. The 1960 population of Mendocino County was 51,200. Los Angeles County has a population in excess of 7,000,000. Carried to its logical conclusion, the district attorney's argument, if valid, would require that all motions for a change of venue in Los Angeles County must be denied because of its population, regardless of the amount of pretrial publicity which surrounds a notorious criminal case. This contention is disposed of by the court in *Maine* in the following language: "We do not intend to suggest, however, that a large city may not also become so hostile to a defendant as to make a fair trial unlikely." (*Maine* v. *Superior Court*, 68 Cal.2d 375, 387, fn. 13 [66 Cal.Rptr. 724, 438 P.2d 372].)

2. The district attorney also seeks to distinguish the *Maine* case on the basis that that case involved a crime of violence

while the instant matter relates to "crimes against the taxpayer." It is contended "that publicity relating to crimes of violence is more apt to reach the public, and more apt to be remembered, than a crime of the type charged in the instant case." However, we need not speculate as to whether publicity concerning the bribery and perjury charges against the petitioner are apt to reach the public. We have before us overwhelming evidence of publicity concerning these charges. As to the relative outrage involved in crimes of violence vis-à-vis bribery an earlier California case in colorful language forcefully suggests that a bribery charge involving a public official is at least of equal public concern. "The defendant stands convicted of one of the most dangerous crimes catalogued in the Penal Code. The murderer deprives an individual of life. The thief despoils a single citizen of property. The judge who forgets the sacred responsibility resting upon him can injure comparatively few by bartering his honor and violating his oath. But the venal legislator is a menace to the impartiality and probity of that system of law, which is the palladium of all rights pertaining to citizenship, and the foundation stone of public safety and security. This crime is secret in its nature, and as baneful as it is insidious in its effects. The social fabric could not long survive if its frequent commission was tolerated, and hence the preservation of our institutions, and the integrity of our system of government, demand that any tendency in that direction be sternly and effectually checked." (*People* v. *Bunkers,* 2 Cal.App. 197, 208 [84 P. 364].)

Let a peremptory writ of mandate issue directing the Superior Court of Los Angeles County to grant the motion for a change of venue, hold a hearing in order to select a county in which a fair and impartial trial can be had, and transfer the cause to that county.

Roth, P. J., and Wright, J., concurred.

A petition for a rehearing was denied October 14, 1969, and the petition of the real party in interest for a hearing by the Supreme Court was denied November 12, 1969.