[Civ. No. 29345. First Dist., Div. Four. Apr. 20, 1971.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
EMILE AUBERT THOMPSON, Real Party in Interest.

## COUNSEL

Louis P. Bergna, District Attorney, and Leo F. Himmelsbach, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

White, Cruikshank & White and Clinton W. White for Real Party in Interest.

## OPINION

**RATTIGAN, J.**—The People seek prohibition to restrain the transfer of a murder prosecution from Santa Clara County pursuant to an order of respondent court granting a defense motion for a change of venue from that county. We have concluded (1) that the People may properly pursue extraordinary relief in this court and (2) that, under the circumstances hereinafter recounted, an appropriate writ must issue.

The murder charge arises from a shooting in which Richard Huerta was killed in San Jose on August 6, 1970, while on duty as an officer of that city's police department. Shortly after the shooting, real party in interest Emile Aubert Thompson (hereinafter "defendant") was arrested and charged with Officer Huerta's murder.[1] After defendant had been held to

---

[1] In two counts of a criminal complaint filed against him, defendant was charged with the officer's murder (Pen. Code, § 187) and with the use of a firearm in its com--

answer in respondent court, and had been arraigned therein, he moved for a change of venue, pursuant to Penal Code sections 1033 and 1034, upon the ground that a fair and impartial trial could not be had in Santa Clara County. Respondent court having granted the motion, the People commenced the present proceeding.

■ The first question pertains to the People's standing to pursue this proceeding. The decisions dealing with the pretrial right to appellate review of criminal venue orders have recognized that a *defendant* may challenge an order *denying* a change of venue by seeking an appropriate extraordinary writ in a higher court (*Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 378-381 [66 Cal.Rptr. 724, 438 P.2d 372]; *Fain* v. *Superior Court* (1970) 2 Cal.3d 46, 51, 55 [84 Cal.Rptr. 135, 465 P.2d 23]; *Smith* v. *Superior Court* (1969) 276 Cal.App.2d 145, 147, 151 [80 Cal.Rptr. 693]; *Clifton* v. *Superior Court* (1970) 7 Cal.App.3d 245, 248-249, 255 [86 Cal.Rptr. 612]; *Lansdown* v. *Superior Court* (1970) 10 Cal.App.3d 604, 606, 610 [89 Cal.Rptr. 154]; see *People* v. *Tidwell* (1970) 3 Cal.3d 62, 68 [89 Cal.Rptr. 44, 473 P.2d 748]), but none holds that the People have an equivalent right where the trial court has *granted* a change of venue pursuant to a defense motion therefor. Relying upon such lack of authority, and upon the fact that Penal Code section 1033 gives to the defendant alone the right to *move* for a change of venue, defendant contends that a writ should be denied herein because the People are without standing to seek it.

We disagree. The People have no right to *move* for a change of criminal venue because Penal Code section 1033 vests that right in the defendant alone (*Jackson* v. *Superior Court* (1970) 13 Cal.App.3d 440, 442-444 [91 Cal.Rptr. 565]), as a result of calculated selectivity on the part of the Legislature. (*Id.*, at p. 445.) But nothing in section 1033 may readily be construed as denying either party the right to seek *appellate review* of a criminal venue order, because the statute does not deal with that subject. Moreover, the related statute which is applicable to civil actions, but whose language contributed to the original decision giving a criminal defendant the right to seek such review, makes the extraordinary remedy available to both parties alike. (Code Civ. Proc., § 400 [cited to this effect in *Maine* v. *Superior Court, supra,* 68 Cal.2d 375 at p. 379].)

The People are ordinarily obligated to resist a defense motion for change of venue because the same Legislature has vested jurisdiction to prosecute for a crime in the county in which it was committed. (Pen. Code, § 777.)

---

mission. (*Id.*, § 12022.5.) An information filed in respondent court, after preliminary examination, similarly charged him in two separate counts.

When they—the People—are placed in the position of *resisting* such motion, no reason appears that they should be denied the right to press their resistance by an appropriate proceeding in an appellate court, and nothing in the relevant statutes or in the *Jackson* decision (*Jackson* v. *Superior Court, supra,* 13 Cal.App.3d 440 at pp. 442-445) requires such denial. We therefore hold that the People have standing to challenge the present order in this proceeding.

The same reasoning requires that the People seek appellate review by petitioning a higher court for an *appropriate* extraordinary writ. The present petition is styled as seeking "prohibition," and its prayer, in part, is for a writ "restraining" respondent court "from taking any further steps or proceedings to transfer the case to another county." Designation of the proceeding as seeking "prohibition" obviously misses the mark: for one thing, the quoted portion of the prayer would prevent the challenged order's execution without disturbing the order itself. The prayer goes on, however, to ask that "the order granting a change of venue be set aside." We therefore treat the petition as seeking mandate to the just-quoted effect, and appropriate ancillary directions to the trial court. For the reasons next stated, we order a writ of mandate issued.

Defendant's motion for change of venue was made, and his affidavit and other documents in support thereof[2] were filed, in open court. After the motion had been argued by both sides, the trial court discussed it at length; because the net effect of the court's remarks are decisive of our disposition, we set forth the remarks in full. After argument by counsel, the court stated as follows:

"I happen to be one person who resides in this county who never saw any newspaper articles. I was on a camping trip when this whole thing took place, so I haven't had time yet to read them, which I will do before I rule on the motion. From my own personal observations on the bench in this county, trying jury cases in the last four years, as a practicing attorney here and other parts of the state before that, I think there is no question but what the defendant can get a fair trial here. The population of this county is urban and metropolitan, and forty years ago in this county, a case like

---

[2]In the affidavit, defendant alleged that the slain officer was a popular and respected figure in the San Jose community, whereas defendant was a transient student and a "stranger" to the area. The affidavit also alleged, in detail, a course of pretrial publicity asserted to have been prejudicial to defendant in the community. The other documents in support of the motion, submitted as exhibits to the affidavit, were copies of various newspaper accounts discussing the crime, the victim, the defendant, and the course of the prosecution. As will appear, we do not reach the merits of defendant's motion in the present proceeding. Consequently the evidence mentioned need not be summarized further.

this would have incited people, a substantial segment who would be enraged. That doesn't take place any more. I never had trouble getting a jury that I thought was impartial, even in cases where there has been quite a bit of publicity. In the first place, in this county, this is my own opinion and I probably had as much of this as anybody, there is a segment of the community that doesn't read any paper. This is about 20 or 30 percent of the population who don't subscribe to any paper. They don't buy them. They don't watch the news on TV. They don't listen to the news on the radio. You wonder how do they know what is going on. The answer is they don't know. And then the rest of the people, if they read stories like this, most of them forget the stories and even if they recall them and they want to follow the case, it is usually more from a standpoint of curiosity than trying to get even, revenge or hostility or any attitude like that.

"This county does have slightly over a million people, as you indicated in your affidavit. I don't think there is any problem in getting a jury that is impartial with the extensive voir dire you subject them to in a case of this type. I think there is no problem, but the question is not actual prejudice. The Supreme Court says the defendant doesn't have to show actual prejudice, and as far as the trial judge's personal knowledge of the community and newspapers and jurors are concerned and the trial judge's experience, the Supreme Court says in so many words they pay no attention to that. The trial judge's ruling, they pay no attention to that. The Supreme Court is going to decide this on the basis of the cold record strictly. That is what they say they are going to do, and that is what they have been doing. That is the only thing they are going to consider. The defendant does not have to show actual prejudice. He doesn't have to make any showing than by a preponderance of the evidence. All he must do is raise a reasonable likelihood that an impartial trial cannot be had by the papers he files. The question is not for me to decide. All I am doing is guessing as to what the Supreme Court is going to decide because it is a question of fact, but it is different from any other question of fact that the trial court decides. The trial court's finding of fact is of no importance to the Supreme Court on this question. They say that. It is not a question of law. I can predict what they are going to say the law is because I can look at what they said the last time. And if I deny the motion and we have a trial, it is going to be a long trial and an expensive trial and the Supreme Court says it makes no difference whether they get the issue on the change of venue before or after the trial. They are not going to give any point to either side because of the difference, and they are just as willing to set aside a conviction afterwards for the same reason as they will on the ruling on the petition for a writ beforehand.

"So what I am doing is deciding whether or not it is worth spending all

the money, substantial cost to the county and defendant's attorney also—he has got his own time involved in it—against the possibility that the Supreme Court might decide on the basis of the papers in front of me that a change of venue should be granted. It is a question I have to decide. So I am going to look at this matter further and come back at 1:30 [P.M.]."

After a midday recess, and without further discussion by counsel or other proceedings, the trial court continued:

"I am going to grant the motion. I am not granting it because I think there is any showing of prejudice in this county. I don't think there is. I think the defendant could get a fair trial in this county. The kinds of people that are called for jury service in this county, regardless of this publicity, would give the defendant a fair trial, more so than you can get anywhere on any kind of a case. Publicity in this case have [*sic*] been almost entirely confined to a period of two days from the time of the offense. . . .

"The thing that bothers me is in reading the last two Supreme Court decisions on this subject, People against Tidwell by a divided court, the four judge majority decided that, People against Tidwell is still a majority, and the very strong statement about their policies on this type of a motion. In that case, plus the Fain case in the previous volume of the reports, they indicate that the size of the population in the county is not determinative, but that they are more scrupulous in granting these motions in a death penalty case than in other cases, that they will give no weight whatever to the ruling of the trial judge. If I were to deny the motion under the established procedure now, the defendant would have a right to apply for a writ. . . . Suppose he doesn't and we have a trial which is going to be a lengthy trial as things go and expensive, expensive to both sides, does the defendant lose any ground or standing to raise the point on appeal because he failed to apply for a writ?

"The Tidwell cases says he does not, that they will grant the writ in either case before or after conviction if they would have granted it in the first instance, if the Supreme Court judges had been sitting here today as a trial court. So all I am trying to do is predict what they possibly might do, and I am not willing to gamble the time involved and the expense involved on both sides against the possibility that we might be wasting our time. So the motion is granted."[3]

■■ In this discourse, the trial court correctly observed that a criminal

[3]At this point, and after further discussion with counsel, the trial court continued the cause for selection, at a later date, of a new county for trial. The People promptly filed their present petition; pending its disposition, we stayed further proceedings below.

defendant moving for a change of venue is not required to make a specific showing of prejudice, but will establish his right to a change if he shows "even a 'reasonable likelihood' that he will not receive a fair trial" in the prosecuting county. (*People* v. *Tidwell, supra,* 3 Cal.3d 62 at p. 69; *Maine* v. *Superior Court, supra,* 68 Cal.2d 375 at p. 383.) The court was also correct in its stated impressions that this standard will be applied upon appellate review of an order denying a change of venue, whether accorded in a pretrial writ proceeding or on appeal from a judgment of conviction (*People* v. *Tidwell, supra*); that the defendant's failure to pursue a pretrial writ does not preclude him from raising the venue issue on appeal from the judgment (*ibid.,* at pp. 68-69); and that in either instance the reviewing court will determine de novo, from the evidence presented in the trial court, whether the "reasonable likelihood" of an unfair trial has been shown. (*Maine* v. *Superior Court, supra,* at p. 382 [pretrial mandate proceeding]; *People* v. *Tidwell, supra,* at pp. 68, 69 [appeal].) ■ But the fact that the appellate court will review the evidence de novo, and the corollary that a trial court's decision on a venue motion will not command the same weight as action taken within conventional limits of its discretion[4] (see *Maine* v. *Superior Court, supra,* at pp. 381-382), do not relieve the trial court of its duty to rule on the motion in accordance with the standards prescribed by case law.

■ That duty was not discharged here. The trial court's full discourse makes it abundantly clear that the court did not grant the motion because it found from defendant's evidence a "reasonable likelihood" that he could not receive a fair trial in Santa Clara County. That assessment was never made: the motion was granted for the stated reason that the court was unwilling to "gamble the time and the expense involved" in light of the possibility that an appellate court would disagree with an order denying the motion on its merits. The court's action was erroneous because it in effect abdicated the decision-making function of the trial court to another, future forum. A trial court cannot do this in principle, and the prospect of a de novo review by a higher court does not permit it in practice.

The action was also erroneous because it would have introduced a new—and seemingly decisive—element in the consideration of a venue motion by a criminal defendant: i.e., the cost to be incurred by the prosecuting county in the event of appellate disagreement, on appeal from an ultimate judgment, with an order denying the motion. If this principle were valid,

[4]This is necessarily so because the nature of an appellate review is de novo. It is notably untrue, however, that—as the trial court put it—of "[t]he trial judge's ruling, they [the Supreme Court] pay no attention to that"; that "[t]he trial court's finding of fact is of no importance to the Supreme Court on this question"; or that "they will give no weight whatever to the ruling of the trial judge."

all such defense motions would necessarily be granted. The defendant's stake in the matter is his right to a fair and impartial trial, which is a "requirement basic to our jurisprudence." (*Maine* v. *Superior Court, supra,* 68 Cal.2d 375 at p. 384.) The People have a reciprocal stake in the deliberations because they are entitled to have the defendant tried in the county where the crime was committed if he does not establish his right to trial elsewhere (Pen. Code, § 777); the People are, in fact, required to do this because they have no right to seek a change of venue themselves. (*Jackson* v. *Superior Court, supra,* 13 Cal.App.3d 440 at pp. 443-445. See *People* v. *Powell* (1891) 87 Cal. 348, 354-361 [25 P. 481].) Both parties—the defendant and the People—are entitled to have a trial court pass upon a defense motion for change of venue on its merits; the stake of neither of them is properly to be outweighed by the economic consequences which might conceivably follow if one court, in the appellate scheme of things, disagrees with another. In other words, and in this context, a trial court is not to take into account the economic cost of its being wrong.

For the foregoing reasons, the order granting defendant's motion cannot stand. The same reasons demonstrate that the trial court has never properly considered the motion by weighing the evidence and determining the "reasonable likelihood," or not, that defendant cannot receive a fair and impartial trial in Santa Clara County. Accordingly, we will not examine that evidence in this proceeding; we decline to undertake, de novo, a function which was not performed in the first instance and which remains to be executed in accordance with law.

A peremptory writ of mandate will issue, directing respondent court to set aside its order granting the motion of real party in interest Emile Aubert Thompson for a change of venue and to reconsider the motion consistent with the views herein expressed.

Devine, P. J., and Christian, J., concurred.