[Crim. No. 6149. Third Dist. Nov. 15, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS ELLIS BLAKE, Defendant and Appellant.

**COUNSEL**

Treuhaft, Walker & Burnstein and David Nawi for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, James T. McNally and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BRAY, J.**\*—Defendant appeals from judgment after a jury verdict of the Butte County Superior Court, convicting him of violation of Penal Code sections 242 and 243.

### QUESTIONS PRESENTED

1. The evidence is sufficient.

2. No error in instructions.

3. Denial of motion for change of venue proper.·

4. Photographs properly excluded.

### RECORD

An information was filed in the Butte County Superior Court charging defendant with violation of Penal Code sections 242 and 243 (battery on a police officer). His motions for change of venue, certification to juvenile court, and for dismissal of the information under Penal Code section 995 were denied. After a trial, the jury found defendant guilty as charged. His motion for new trial was denied. Pursuant to Penal Code section 1203.03, defendant was placed temporarily in the Medical Facility at Vacaville. Defendant's application for probation was granted, and the imposition of sentence was suspended for three years. Defendant appealed in propria persona. However, he is represented on the appeal by counsel of his own selection.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## 1. *The Evidence Is Sufficient*

■ Officer Madden, a patrolman in the Oroville Police Department, accompanied by Captain Wilson and other Oroville police officers, went to the area of the Butte County fairgrounds on the evening of March 16, 1970. Governor Reagan was attending a Republican Party function there. There was a demonstration protesting the Governor's policies and politics, and rocks were thrown at police officers present. Madden, who was in uniform, was assigned about 8:30 p.m. to the south gate of the fairgrounds. Madden's orders were not to allow any unauthorized person to enter the fairgrounds and, if he was able to do so, to arrest anybody he saw throwing a rock. His position was 15 to 20 feet in front of the gate, in the middle of a line of officers blocking the gate. The officers were faced with a crowd shouting insults and profanities and throwing rocks. The officers had just pushed the crowd back, and the people were scattering when Madden saw defendant pick up a rock and throw it at him. Although Madden ducked, he was unable to avoid being hit. He ran to the field outside the gate, apprehended the individual who had hit him and dragged him back to the gate. Later the person he had apprehended was identified as defendant.

Two of defendant's witnesses testified that the rock which struck Madden came from a different direction from where defendant was apprehended, and that there were only about 10 rocks thrown, none of which struck a policeman. When searched, defendant had no rocks on his person. No one other than Madden saw defendant throw anything. The defense attempted to impeach Madden by testimony that, contrary to his assertion, Madden clubbed defendant repeatedly while apprehending him; the fact that the Chico Chief of Police placed a ditch where Madden said there was none; that the chief's written report said that the object thrown hit the officer's helmet rather than his neck; and that several officers in addition to Madden advanced into the crowd. Obviously there was enough evidence to justify the jury finding that defendant committed a battery on Madden by hitting him with a rock.

■ ■ Defendant's chief attack on the sufficiency of the evidence on appeal is his claim that Madden at the time of the attack is not shown to have been authorized to perform peace officer's duties at the fairgrounds, and that therefore the corpus delicti of the crime was never proved.

Section 830.1 of the Penal Code provides in pertinent part that: ". . . any policeman of a city . . . regularly employed and paid as such . . . is a peace officer. The authority of any such peace officer extends to any

place in the state: . . . (b) Where he has the prior consent of the chief of police, or person authorized by him to give such consent, . . . if the place is within a county . . . (c) As to any public offense committed or which there is probable cause to believe has been committed in his presence, and with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of such offense."[1]

To constitute a violation of section 243, it is elemental that the evidence must show (in addition to the battery) that: 1. the victim was a peace officer within the meaning of the Penal Code; 2. the victim was engaged in the performance of a lawful duty; and 3. the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of his duties. Defendant's attack is on the first and second requirements, for obviously if the first requirements were met, defendant knew or reasonably should have known that Madden in a policeman's uniform engaged in a line of other peace officers in resisting breaches of the peace was engaged in the performance of his duties.

The place where the rock was thrown was in the County of Butte outside the Chico city limits. The evidence showed that Madden and the other uniformed Oroville police officers went to the fairgrounds to assist the Chico city police and the Butte County Sheriff's Department in meeting the rock throwing demonstration. The Chico city police were there pursuant to a mutual assistance agreement with the sheriff's department. The sheriff's department was the controlling law enforcement agency there. Sergeant Allen of that department is the one to whom Madden gave the rock which struck him. There is no requirement that the sheriff's consent has to be in writing or evidenced in any particular manner. Madden testified that when he arrived at the fairgrounds he was first "assigned to a Sheriff's marked unit" patrolling the grounds. Moreover, the sheriff's sergeant testified that the controlling agency on the night in question was his department. Sheriff's Sergeant Allen under the circumstances had authority to give the necessary consent which was evidenced by the fact that Madden was acting under the direction of, and with members of, the sheriff's department. Under these circumstances it is unnecessary to prove any formal consent. The purpose of section 830.1 subdivision (b) is to make sure that a peace officer of one geographical area does not invade a different area to act

---

[1]Defendant was convicted of violating sections 242 and 243 of the Penal Code. Section 242 provides: "A battery is any willful and unlawful use of force or violence upon the person of another." Section 243 provides in pertinent part for a greater degree of punishment for a battery "When it is committed against the person of a peace officer . . . and the person committing the offense knows or reasonably should know that such victim is a peace officer . . . engaged in the performance of his duties, and such peace officer . . . is engaged in the performance of his duties. . . ."

without the knowledge and consent of the sheriff of the latter area. It does not require that where the officer is acting with the sheriff's officers that the officer must announce to wrongdoers "I have the Sheriff's consent."

■ In meeting the requirement of proving the corpus delicti, the foundation is laid by the introduction of evidence which creates a reasonable inference that the necessary facts are shown. (*People* v. *Jacobson* (1965) 63 Cal.2d 319, 329 [46 Cal.Rptr. 515, 405 P.2d 555].)

■ Also, section 830.1, subdivision (c) gave Madden full authority to make the arrest of defendant as defendant was committing public offenses in Madden's presence "with respect to which there is immediate danger to person . . . or of the escape of the perpetrator. . . ." Defendant was disturbing the peace and throwing rocks at the peace officers. Even though he had not hit anyone, Madden could have arrested him for disturbing the peace and other offenses. *People* v. *Curtis* (1969) 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], is not in point. That case had nothing to do with a peace officer acting outside of his geographical area. There it was held that the arrest was unlawful because of lack of probable cause to make the arrest. The officer had no warrant and nothing happened in his presence to justify the arrest. In the instant case the violations of the law including that of striking Madden took place in his presence.

Nor does *People* v. *Aldapa* (1971) 17 Cal.App.3d 184 [94 Cal.Rptr. 579], apply. There the Los Angeles City police officers were acting outside the city limits. There was no pretense that they had the consent of the sheriff or of any of his officers, nor were they acting with anyone from his department. They had neither a search warrant nor an arrest warrant and no crime was committed in their presence until after the illegal arrest.

## 2. *No Error In Instructions*

■ Defendant contends that the court should have given *sua sponte* an instruction to the effect that the jury should determine whether Madden had authority to act. No issue was made concerning this matter at the trial. More important is the fact that had the issue been raised it would have been an issue of law for the court to determine and not an issue of fact for the jury; and finally, the evidence, as we have heretofore shown, leaves no doubt of Madden's authority.

■ Defendant also contends that the court should have instructed *sua sponte* that simple battery was an included offense. Both prosecution and defense originally offered instructions on battery as an included offense. Both withdrew them. There was no evidence which would have

justified such an instruction. Defendant knew that Madden was a peace officer; he knew that he was acting with the other peace officers in trying to keep the peace and preventing the throwing of rocks. Thus, the only question in the case was did defendant hit Madden. If he did not, he was innocent of the crime charged. If he did, he was guilty not of simple battery but of violation of section 243. Moreover, defendant's defense was that he did not throw the rock that struck Officer Madden. The very fact that defendant withdrew his proposed instruction on included offense indicates that counsel as a matter of trial tactics wanted to stand on that defense and not risk the possibility of a compromise verdict. ■ *People v. Coleman* (1970) 8 Cal.App.3d 722, 733 [87 Cal.Rptr. 554], held that the trial court was under no requirement to instruct on an included offense where such an instruction was not pertinent to the defendant's theory of the case or to the end produced.

### 3. *Change of Venue*

■ Defendant contends that he was denied a fair trial because of the denial of his motions for change of venue, one made prior to trial and one made during *voir dire*.

In the months of March and April—the month of the crime and the month following—there was considerable publicity about the demonstration at the fairgrounds. The demonstrations were characterized in unfavorable language and their acts thoroughly condemned by public officials and the press.

In the editorials concerning the affair defendant's name was mentioned only once. Apparently after April, the newspapers did not, as was done in *Fain* v. *Superior Court* (1970) 2 Cal.3d 46 [84 Cal.Rptr. 135, 465 P.2d 23], keep the issue alive. ■ The trial occurred six months after the affair at the fairgrounds. The test of whether a motion for change of place of trial should be granted because of the "dissemination of potentially prejudicial material" as here, is whether there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. (*Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383 [66 Cal.Rptr. 724, 438 P.2d 372].) ■ It is the duty of this court to make an independent evaluation of the evidence and satisfy itself de novo whether the denial by the trial court of a change of venue deprived defendant of a fair and impartial trial. (*Maine* v. *Superior Court, supra,* at p. 382.) Defendant did not follow the suggestion in *Fain* v. *Superior Court, supra,* 2 Cal.3d 46, 54, that it is preferable to have the question of venue passed upon on the appellate level prior to trial. This, of course, does not prevent him from having it passed on now. However, the difference between a review after trial rather

than before is set forth in *People* v. *Quinlan* (1970) 8 Cal.App.3d 1063, 1070 [88 Cal.Rptr. 125], where the court said: "If a defendant elects the pretrial mandate alternative, he may well be in a position to urge that doubts be resolved in his favor. But if he elects to await trial and conviction before he seeks appellate review, he cannot complain if inferences of possible prejudice, available on a semi-silent record, have been refuted by the actualities of *voir dire* and of trial."

The responses of the jurors on *voir dire* proved that the publicity would not and did not cause prejudice against defendant in their minds. Of the excused jurors, some knew little or nothing of the case, and several had vague recollections or remembered the case from reading about it in the papers, or hearing of it. Of the jurors selected, two had heard or read nothing concerning it, and several had only vague recollections of reading of it, while one had heard of it only on radio news, and two considered themselves well informed by virtue of their exposure to the newspapers. Nine plus the alternate juror had read or heard something about it. All 12 clearly indicated that they were not prejudiced in any way against defendant. The court kept notes of the jurors' responses and noted that they were thoroughly examined as to their state of mind.

On April 27 (the next month after the fairgrounds incident) defendant was arrested in connection with a "peaceful" street blocking incident in Chico on a charge of conspiracy. Publicity concerning this appeared in the papers. Only one juror had heard of this other case. Extensive questioning of the jurors concerning their familiarity with the publicity and its effect on them was made. On this issue each case stands on its own facts. The gravity of the crime is a factor, and while the charge against defendant was a serious one, it was not as grave as in practically all of the cases in which a change of venue was required. The publicity situation in Butte County concerning the fairgrounds affair in no wise resembles that in Santa Cruz County described in *Frazier* v. *Superior Court* (1971) 5 Cal.3d 287 [95 Cal.Rptr. 798, 486 P.2d 694], cited by defendant, where the defendant was charged with murder of a prominent Santa Cruz eye surgeon, his wife, their two minor sons and the doctor's secretary. There, the county remained outraged from the time of the killing to the time of the motion for change of place of trial. In the instant case there is no evidence that the indignation concerning the happening at the fairgrounds continued. It is a well-known fact that, unless someone is killed or seriously injured (and this did not occur here), it is surprising how quickly the public's interest in a minor riot disappears.

Our review of the inflammatory publicity, coupled with the time of trial

and a study of the answers of the jurors, the prospective ones as well as those chosen to try the case, and of the record of the trial, convinces us that the defendant had a fair trial uninfluenced by the unfair publicity which occurred, and that there was no "reasonable likelihood" to the contrary.

### 4. *Photographs*

Defendant contends that three photographs taken of the scene one month after the incident were improperly excluded. The purpose of the photographs was to show that under the lighting conditions at the scene the night of the trouble Madden could not have identified defendant as the thrower of the rock. The police had ordered the pictures taken. The prosecution, apparently feeling that the lighting conditions could not be shown to be the same on the two nights, did not offer them in evidence. Defendant did. The court went to considerable length to explain why the conditions were not comparable, and that a proper foundation to show substantial similarity of lighting conditions was not laid.

" 'It is for the trial court to determine, from the evidence before it, whether a photograph offered is a correct representation of the object or scene in question, and the ruling will be sustained on appeal unless it is apparent that there has been an abuse of discretion.' " (*People* v. *Robbins* (1964) 225 Cal.App.2d 177, 182 [37 Cal.Rptr. 244].)

The court pointed out that it was not known what the conditions of the moon or clouds were on either night; there were lights on in buildings on the night of the crime which were not on the night of the photography; there were lights in other businesses in the area and on cars on public roads not shown to have been on the night of the disturbance. While defendant attempts to minimize these differences, they were sufficient to support the court in its discretion to rule out the photographs.

Judgment affirmed.

Friedman, Acting P. J., and Janes, J., concurred.