[Crim. No. 3721. Fourth Dist., Div. One. June 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ANNIE LEGERRETTA et al., Defendants and Appellants.

**COUNSEL**

Daniel B. Hunter and John H. Thomsen, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert J. Polis, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**WHELAN, J.**—Annie Legerretta (also known as Annie Mendoza) and Benito Martinez, codefendants below, appeal from judgments imposing sentence for conspiracy to commit theft (Pen. Code, § 182) and appeal from their convictions of grand theft (Pen. Code, § 487, subd. 1).

### PROCEEDINGS BELOW

On August 14, 1968, a two-count indictment was returned charging Annie Legerretta (Annie) and Benito Martinez (Benito) with grand theft committed between April 1, 1950, and February 29, 1968, and with conspiracy to commit grand theft, the overt acts of which were alleged to have occurred September 22, 1967, and March 6, 1968.

Sentences of both defendants to the state prison were imposed on the

conspiracy convictions; sentences were suspended upon the grand theft convictions.

## THE EVIDENCE

Benito was the father of four children born to Annie, of whom Danny, born May 17, 1949, was eldest, the others being David, Manuel and Ramona. Annie first applied for aid to needy children through the San Diego County Welfare Department on March 13, 1950, for Danny and received such aid. Thereafter she made renewal applications from time to time, the last being on September 22, 1967. Later applications covered other children of Benito as well as Danny. In each instance, in making application she falsely represented that the father of Benito's children was one Jose Mendoza whose whereabouts were unknown to her. During all of that period Annie knew the whereabouts of Benito, and during certain periods lived under the same roof with him. During the entire period Annie received $34,020.89 in needy children assistance. In a written statement submitted to the Welfare Department on March 6, 1968, Benito stated he was not the father of any of Annie's children. Consuelo Montoya, daughter of Benito and of Annie's sister, about the middle of March 1968, told Benito that Annie was being investigated by the Welfare Department. Benito replied if they all stuck together no one would discover he was the father of the boys. He had as early as 1952 admitted to his then wife, Annie's sister, that he was the father of Danny. From 1952 to 1955 Benito sent from $6 to $15 a week to Annie.

## QUESTIONS ON APPEAL

The questions to be answered are these:

1. In view of the holding in *People* v. *Gilbert,* 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580], may the convictions of conspiracy stand and, if so, may they be punished other than as a misdemeanor?

2. Is the conspiracy count barred by the statute of limitations?

3. Was evidence improperly admitted of happenings that occurred prior to the time the applicable statute of limitations commenced to run on the conspiracy charge?

4. Was the evidence sufficient to support the conspiracy verdicts?

5. Should Annie's motion for severance, made during the course of trial, have been granted?

6. Should evidence of statements made by Benito to his wife, overheard by her daughter, have been admitted, although not objected to at trial?

7. Were statements made by Annie to Welfare Department investigators inadmissible under the rule of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]?

8. Did the court err in denying Annie's motion for mistrial based upon the district attorney's improper cross-examination?

## First Question

■ The conviction of grand theft it is conceded must be set aside and the charge dismissed under the authority of *People* v. *Gilbert, supra,* 1 Cal.3d 475. The substantive crime of which defendants might have been convicted was a misdemeanor, a violation of section 11482, Welfare and Institutions Code.

If, however, a violation of section 11482 is a theft, a conspiracy to violate the section is a conspiracy to commit theft.

*People* v. *Gilbert, supra,* 1 Cal.3d 475, 479-481, declares: "As we stated in *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593], 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.'

". . . . . . . . . . .

"Inasmuch as the clause as to false statements applies only to statements made *in obtaining* unauthorized assistance, it follows that any conduct which violated that clause would also constitute a violation of the theft provision of the Penal Code."

The conspiracy convictions, therefore, need not fall with the convictions of grand theft.

At one time the language of section 182, Penal Code, prescribed for certain offenses a misdemeanor punishment exclusively (*Lesser* v. *Collins,* 1 Cal.App.2d 161 [36 P.2d 411]; *People* v. *Vanderpool,* 20 Cal.2d 746 [128 P.2d 513]). However, a conspiracy to commit theft, or to violate section 11482, Welfare and Institutions Code, was never among the crimes exclusively so punishable.

■ Where a conspiracy to commit a specific crime is defined by a statute other than section 182, Penal Code, and is declared to be a misdemeanor by the defining statute, it may be prosecuted and punished only as a misdemeanor (*In re Williamson,* 43 Cal.2d 651 [276 P.2d 593]).

■ There is no separate definition of a conspiracy to violate section 11482, Welfare and Institutions Code. Such a conspiracy may be prosecuted and punished only under section 182, Penal Code, as a conspiracy "to commit any crime" (*Doble* v. *Superior Court,* 197 Cal. 556 [241 P. 852]) or "to . . . obtain money . . . by false pretenses."

In either event, the conspiracy may be punishable as a felony or as a misdemeanor, even though the substantive offense be only a misdemeanor (*People* v. *Campbell,* 1 Cal.App.2d 109, 113 [36 P.2d 198]; *Lesser* v. *Collins, supra,* 1 Cal.App.2d 161, 164-165; *Doble* v. *Superior Court, supra,* 197 Cal. 556).

The authorities cited dispose of the incidental claim that the superior court was without jurisdiction of the subject matter.

## SECOND QUESTION

■ For the purpose of determining whether the conspiracy count is barred by the statute of limitations, it might be unnecessary to decide whether section 800 or section 801, Penal Code, is the applicable statute. Upon the authority of *Doble* v. *Superior Court, supra,* 197 Cal. 556, the three-year statute is applicable.

Proof that one of the overt acts in furtherance of the conspiracy occurred after the time before which the statute of limitations would be a bar is sufficient (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 184 [281 P.2d 250]; *People* v. *Hess,* 104 Cal.App.2d 642, 678 [234 P.2d 65]).

Here both of the overt acts charged and proven occurred within the 12 months prior to the return of the indictment; and the evidence of Consuelo Montoya also shows that the conspiracy continued to exist within that period.

## THIRD QUESTION

■ Related to the second question is whether evidence of acts that occurred prior to the commencement of the running of the statute of limitations was properly admitted.

Such evidence was properly admitted as relevant to the issue whether a conspiracy existed within the period of limitations (*Bompensiero* v. *Superior Court, supra,* 44 Cal.2d 178, 185; *People* v. *Gordon,* 71 Cal.App.2d 606, 629 [163 P.2d 110]; *People* v. *Stevens,* 78 Cal.App. 395, 407 [248 P. 696]).

## FOURTH QUESTION

We need not recite all the evidence or analyze it in detail. The facts related sufficiently support the verdicts of conspiracy.

## FIFTH QUESTION

■ Annie made a motion for severance after all parties had rested on January 22, 1969, the trial having started on January 15. She had made a similar motion on January 21 for another reason.

The ordering of a separate trial under section 1098, Penal Code, must be made before the commencement of trial. If that has not been categorically stated before, it is only because it is obvious. A motion for severance must be decided upon the showing made at the time of the making of the motion and not upon what may have transpired thereafter at the trial. (*People* v. *Santo,* 43 Cal.2d 319, 332 [273 P.2d 249]; *People* v. *Pierson,* 139 Cal.App. 734, 736 [34 P.2d 755].)

Whether the evidence was properly introduced, the admission of which was the basis of Annie's motion for severance, is another question. It consisted of statements made as to the paternity of Annie's children based upon reputation in the family, which was objected to only for lack of foundation; testimony as to admissions of paternity by Benito, as to which in only one instance was an admonition requested that it might be considered only as to Benito, but as to which no objection had been made; and of Benito's statement that if "we all stuck together" his paternity would remain undiscovered, received without objection; and as to a statement made by Annie that Benito was the father.

## SIXTH QUESTION .

■ Evidence was received of a conversation overheard by a daughter of Delores, Benito's wife and Annie's sister, in which Benito admitted paternity of some of the children. No objection was made to the questions eliciting the testimony, no claim of marital privilege urged.

A defendant may not claim on appeal for the first time that the admission of testimony violated the marital privilege (*People* v. *Kroeger,* 61 Cal.2d 236, 246 [37 Cal.Rptr. 593, 390 P.2d 369]; *People* v. *Mabry,* 71 Cal.2d 430, 438 [78 Cal.Rptr. 655, 455 P.2d 759] [dictum]).

## SEVENTH QUESTION

■ William Reese Foster, a senior social worker acting as a special investigator for the San Diego County Department of Public Welfare, inves-

tigated in 1968 a community complaint that an unreported male was living in Annie's home. It was stipulated Foster was not a law enforcement officer. At Annie's house he saw two children not covered by the Welfare Department budget and inquired about them. Annie said she was baby-sitting for the mothers, her sister and a neighbor.

On March 12, 1968, Dorothy Lavina Woodman, employed in the family support division of the San Diego County District Attorney's office, interviewed Annie for the purpose of discovering when she had last seen Jose Mendoza, with a view to a possible prosecution of the father of the children for failure to provide. Annie told her she had last seen Jose in 1958 when she was about three months pregnant, and that his employment was fishing.

There is nothing in the evidence to indicate the statements made by Annie were made under circumstances that required she be first admonished as to her Sixth and Fifth Amendment rights as articulated in *Miranda* v. *Arizona, supra,* 384 U.S. 436, and *People* v. *Dorado, supra,* 62 Cal.2d 338.

## EIGHTH QUESTION

In the district attorney's cross-examination of Benito, who before that cross-examination had said he had never defrauded anyone, Benito was asked if he had misappropriated property of an employer, which he denied. Later he was asked if he had brought the woman with whom he was living from Mexico.

Annie's counsel objected to the last question as irrelevant and said, "I am going to make a motion for mistrial right now."

The objection was sustained and the motion denied. That denial is assigned as error.

We find no abuse of discretion in the court's denial of the motion for mistrial, the grounds of which were not stated. The irrelevance of the question put to Benito does not alone show bad faith on the part of the district attorney.

Benito filed demurrers to the indictment which were overruled. They raised questions concerning the statute of limitations that have been dealt with.

The verdicts finding Benito and Annie guilty of grand theft are ordered set aside and the count charging grand theft dismissed. The judgments dealing with the conspiracy count are affirmed.

Brown (Gerald), P. J., and Ault, J., concurred.

A petition for a rehearing was denied June 29, 1970, and the petition of appellant Martinez for a hearing by the Supreme Court was denied August 12, 1970.