[Crim. No. 1863. Fifth Dist. Nov. 21, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCUS L. WITT, JR., et al., Defendants and Appellants.

## Counsel

Michael Korn, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—Appellants, Marcus L. Witt, Jr., Joe Witt and Marcus L. Witt III[1] were convicted by a jury of conspiracy to defraud the estate of Pearle P. Zalud and named legatees and devisees in violation of Penal Code section 182, subdivision 4.[2] The trial started on October 23, 1973, and ended November 28, 1973.

Appellants urge a number of points for reversal which we shall consider seriatim after a summary of the pertinent facts. Appellants do not argue that the evidence was insufficient to support the verdict.

### FACTS

Pearle P. Zalud died in Porterville, Tulare County, at the age of 85 years on February 4, 1970, leaving an estate valued at approximately $1 million. She was a member of a pioneer family in that area and maintained a home there, although she lived part of the time in Los Angeles.

Her formally drawn will dated October 1, 1967, and a codicil thereto dated July 26, 1969, (hereinafter referred to as the "formal will") were filed for probate in Los Angeles County on March 10, 1970. Except for a few minor bequests, this formal will left her estate to be used for charitable purposes, including the City of Porterville and the Roman Catholic Bishop of Fresno, a corporation sole.

---

[1] Marcus L. Witt, Jr., and Joe Witt are brothers, and Marcus L. Witt III was the son of Marcus L. Witt, Jr. Marcus L. Witt III died pending this appeal; the action has been abated as to him.

[2] In addition to the conspiracy count, the original information charged appellants with forgery of a will in violation of Penal Code section 470 and preparing false documentary evidence in violation of Penal Code section 134. Upon appellants' motion under Penal Code section 1118.1 at the close of the People's case, the court dismissed the forgery count on the ground that there was no evidence to show a forgery had occurred within Tulare County. The false documentary evidence count was dismissed by the prosecution during closing argument in the interest of justice and upon the belief that the three-year statute of limitations (Pen. Code, § 800) had run on that charge.

At the hearing in the Superior Court of Los Angeles County on March 31, 1970, for admission of the formal will to probate, appellants Joe Witt and Marcus L. Witt, Jr., appeared and presented a later will purportedly executed by decedent on October 12, 1969, and witnessed by Marcus L. Witt, Jr., and Marcus L. Witt III (hereinafter referred to as the "Witt will"). This will, which was typed on a one-page Wolcotts printed form, left all of the decedent's estate, except $6,000, to Joe Witt, who was unrelated to decedent.

In the subsequent will contest proceeding which went to trial in March 1971 in Los Angeles County, the jury determined that the Witt will was not signed by the testatrix, Pearle P. Zalud.[3]

On October 26, 1972, the information in the case at bench was filed in Tulare County. The information in substance alleged that in pursuance of a conspiracy among appellants, which continued between October 12, 1969, and March 26, 1970, appellants on 'or about the 12th day of October 1969 in the County of Tulare procured, prepared or produced a false and fraudulent will under the name of said Pearle P. Zalud. This was the single overt act alleged, and the prosecution's evidence showed that this overt act consisted of appellant Joe Witt going to an office machine store in Porterville and causing the proprietress to type the Witt will.

At the trial and during final arguments on November 26, 1973, the People's motion to amend the conspiracy count was granted over appellants' objection and an amended information was filed on November 27, 1973. The amended information extended the continuation of the conspiracy through March 1971 and alleged a second overt act consisting of appellants Joe Witt, Marcus L. Witt, Jr., and Marcus L. Witt III testifying as to the authenticity of the Witt will in the Superior Court of Los Angeles County in March 1971 during the civil will contest proceeding.

STATUTE OF LIMITATIONS

Appellants first contend that the proceeding is barred by the statute of limitations.

---

[3]The judgment was affirmed on appeal and is reported in *Estate of Zalud* (1972) 27 Cal.App.3d 945 [104 Cal.Rptr. 329].

■ In California no agreement amounts to a conspiracy unless an overt act is done to effect the object thereof, and the pleading and proof of such an act is a necessary element of the offense. (Pen. Code, §§ 184, 1104; *People* v. *Crosby* (1962) 58 Cal.2d 713, 728 [25 Cal.Rptr. 847, 375 P.2d 839].) ■ It is also established that "[a]s the overt act marks the commission of the crime and fastens criminal liability upon the conspirators [citations], the period of limitations must be deemed to begin running at that time; and where, as here, the conspiracy as charged is a continuing one, the period begins to run with the commission of the last overt act alleged." (*People* v. *Crosby, supra,* 58 Cal.2d at p. 728; see *Bompensiero* v. *Superior Court* (1955) 44 Cal.2d 178, 184-185 [281 P.2d 250]; *People* v. *Legerretta* (1970) 8 Cal.App.3d 928, 934 [87 Cal.Rptr. 587].)

Since the only overt act alleged in the original information occurred on October 12, 1969, and the information was filed on October 26, 1972, the three-year statute of limitations (Pen. Code, § 800) barred the information on its face.

■ In the field of criminal law a statute of limitations is jurisdictional in nature. It is an essential element of the offense charged, to be proven by the prosecution, and the defense is not waived by defendant's failure to raise it. Accordingly, when an information shows on its face that the prosecution of the offense is barred by the statute of limitations, the defense may be raised at any time before or after judgment. (*In re Demillo* (1975) 14 Cal.3d 598, 601 [121 Cal.Rptr. 725, 535 P.2d 1181]; *People* v. *McGee* (1934) 1 Cal.2d 611, 613 [36 P.2d 378]; *People* v. *Swinney* (1975) 46 Cal.App.3d 332, 340 [120 Cal.Rptr. 148].)

■ The record herein shows that appellants did not demur to the information or raise the bar of the statute of limitations until November 19, 1973,[4] during the prosecution's rebuttal testimony, when appellants moved to dismiss the information on the ground the statute had run. The court denied the motion under the erroneous belief that the running of the statute was tolled on October 11, 1972, which was the date appellants were bound over for trial in the superior court, rather than on the date the information was filed on October 26, 1972.

---

[4]Appellants did move for a judgment of acquittal pursuant to Penal Code section 1118.1 on November 5, 1975, at the close of the prosecution's case. However, the motion was limited to the ground that the evidence was insufficient to sustain a finding that Tulare County had territorial jurisdiction over the offense charged. No mention whatsoever was made of the statute of limitations. We shall consider the matter of territorial jurisdiction at a later point herein.

Later on the same day (Nov. 19, 1973), after both the prosecution and defense had rested, appellants' counsel moved for a judgment of acquittal pursuant to Penal Code section 1118.1, on the ground the statute of limitations had run, which again was denied.

Three trial days later, on November 26, 1973, the prosecutor indicated he would move to amend the information to allege a second overt act as having occurred in March 1971, and the amendment was allowed to be filed over appellants' objection during final arguments on November 27, 1973. Further, a continuance was denied to appellants.[5]

A proper resolution of the problem posed by this set of facts requires an examination of the procedural aspects of the attack launched upon the information. The motions denominated a motion to dismiss and a motion for judgment of acquittal pursuant to Penal Code section 1118.1 are inappropriate and unauthorized procedural devices to attack a defect appearing upon the face of the pleading. ■ A motion made pursuant to Penal Code section 1118.1 is an evidentiary motion going to the sufficiency of the evidence to sustain a conviction of the offense charged, and, if granted, operates as a judgment on the merits. (See Pen. Code, §§ 1118.1, 1118.2.) The code does not recognize a motion labeled a motion to dismiss, and it also appears that the statutory procedures are intended to be exclusive. (See *People* v. *Indian Peter* (1874) 48 Cal. 250, 253; *People* v. *Odom* (1970) 3 Cal.App.3d 559, 564 [83 Cal.Rptr. 520]; 18 Cal.Jur.3d, Criminal Law, § 968, p. 694.)

■ The appropriate statutory remedies for attacking a defect appearing upon the face of the information going to a failure to state a triable offense, as in the case at bench, are demurrer (Pen. Code, §§ 1004-1007), motion to dismiss the jury (Pen. Code, §§ 1113-1117), motion in arrest of judgment (Pen. Code, §§ 1185-1188), and appeal. (See *People* v. *Megladdery* (1940) 40 Cal.App.2d 748, 757 [106 P.2d 84].) The order or judgment entered pursuant to these procedures does not finally dispose of the matter if the prosecution can remedy the defect. (See above Penal Code citations; as to a judgment on appeal, see *People* v. *Rose* (1972) 28 Cal.App.3d 415, 418 [104 Cal.Rptr. 702].)

■ From what has been said, it follows that since appellants did not demur to the information but raised the limitations issue before the jury returned its verdict, their appropriate remedy was a motion to discharge

---

[5]Whether it was an abuse of discretion to allow the amendment and deny the continuance will be considered in the next succeeding part of this opinion.

the jury pursuant to Penal Code section 1113,[6] instead of a motion to dismiss or motion for judgment of acquittal. While appellants were in error in their nomenclature for the motions on November 19, we exalt substance over form and treat the motions as if they had been properly made under Penal Code section 1113.

■ Penal Code section 1113 has been a part of the code since 1872, but it has never been definitively interpreted nor is it referred to in any of the standard reference works on criminal law. Keeping in mind the canon of construction that every word in a statute must, where possible, be given effect, it is of crucial significance in interpreting section 1113 that the statute uses the discretionary "may" rather than the mandatory "must" or "shall." Taking this directory language in conjunction with the rule that if the defect is of facts charged which can be cured by amendment such an amendment should be permitted, we can perceive no reason for the use of the discretionary language in the statute other than to give the trial judge an opportunity, if otherwise proper, to permit an amendment of the information to correct the defect.

■ That, of course, is precisely what occurred in the case at bench; the judge permitted an amendment to allege a second overt act bringing the charge well within the statutory period. Assuming therefore that there was no abuse of discretion in permitting the amendment, there was no error in denying the November 19 motions directed to the issue that the conspiracy charge was barred by the statute of limitations.

### ABUSE OF DISCRETION IN PERMITTING AMENDMENT AND DENYING CONTINUANCE

Appellants argue that the court abused its discretion in permitting the information to be amended to allege the second overt act during their closing arguments to the jury and in denying their motions to reopen the case and for a continuance for the purpose of gathering and presenting additional evidence with regard to the allegations of the amendment. It is to be noted that the court permitted both sides to reopen their arguments.

Penal Code section 1009 authorizes amendment of an information to correct any defect or insufficiency at any stage of the proceedings

---

[6]Penal Code section 1113 provides: "The court may direct the jury to be discharged where it appears that it has not jurisdiction of the offense, or that the facts charged do not constitute an offense punishable by law."

provided the amendment does not change the offense charged by the original information to one not shown by the evidence taken at the preliminary examination. If the substantial rights of the defendant would be prejudiced by the amendment, a reasonable postponement not longer than the ends of justice require may be granted. (*People* v. *Graham* (1974) 38 Cal.App.3d 251, 255 [112 Cal.Rptr. 915]; *People* v. *Gonzalez* (1972) 28 Cal.App.3d 1091, 1095 [104 Cal.Rptr. 530] (disapproved on other grounds in *People* v. *Schueren* (1973) 10 Cal.3d 553, 558 [111 Cal.Rptr. 129, 516 P.2d 833]); *People* v. *Spencer* (1972) 22 Cal.App.3d 786, 799 [99 Cal.Rptr. 681].) An amendment may be made even at the close of trial where no prejudice is shown. (See *People* v. *Gonzalez, supra; People* v. *Flowers* (1971) 14 Cal.App.3d 1017, 1020 [92 Cal.Rptr. 647]; *People* v. *Milligan* (1926) 77 Cal.App. 745, 748-749 [247 P. 580].) It is a matter within the sound discretion of the trial court. *(People* v. *Flowers, supra.)* Whether a defendant has affirmatively demonstrated that justice requires a continuance is a factual matter, and in the absence of an abuse of discretion the trial court's determination will not be disturbed on appeal. (*People* v. *Murphy* (1973) 35 Cal.App.3d 905, 920 [111 Cal.Rptr. 295].)

The instant case meets the requirements of Penal Code section 1009. An information charging a conspiracy may be amended to allege an additional overt act without alleging a different offense. (*People* v. *Kynette* (1940) 15 Cal.2d 731, 759 [104 P.2d 794] (cert. den., 312 U.S. 703 [85 L.Ed. 1136, 61 S.Ct. 806]; overruled on other grounds in *People* v. *Snyder* (1958) 50 Cal.2d 190, 197 [324 P.2d 1]; disapproved on other grounds in *People* v. *Horn* (1974) 12 Cal.3d 290, 301 [115 Cal.Rptr. 516, 524 P.2d 1300] and *In re Wright* (1967) 65 Cal.2d 650, 652-653 [56 Cal.Rptr. 110, 422 P.2d 998]); *Feagles* v. *Superior Court* (1970) 11 Cal.App.3d 735, 738 [90 Cal.Rptr. 197]; *People* v. *Cancimilla* (1961) 197 Cal.App.2d 242, 252 [17 Cal.Rptr. 498].) The additional overt act, alleging in substance that appellants vouched for the validity and genuineness of the Witt will in the testimony of Marcus L. Witt, Jr., and Marcus L. Witt III in the civil trial in March 1971, was shown by the evidence at the preliminary examination. It also appears that copies of the transcript of the preliminary hearing were in appellants' possession.

Appellants' position throughout both this proceeding and the civil trial was not to deny participation in the events leading up to the execution and presentation of the Witt will but was that the Witt will was not a forgery. At no time did appellants purport to deny the fact that they had testified at the civil trial. Marcus L. Witt, Jr., admitted testifying at the

civil trial; Joe Witt admitted having a copy of the transcript of the civil trial; and the attorney for Marcus L. Witt, Jr., was willing to stipulate to the content of his client's testimony given at the civil trial. Further, there was independent proof of the facts contained in the amendment.

Thus, there were no new legal issues created by the amendment, and there was in reality no dispute whatsoever that appellants had testified in accordance with the new allegations. As the trial judge stated in allowing the amended information, "[t]he open act of appearing in the Los Angeles Court and testifying is not really a contested fact of this case." Under these circumstances additional time to prepare to meet the allegations in the amendment was unnecessary and pointless. There was no abuse. (*People* v. *Murphy, supra,* 35 Cal.App.3d at pp. 922-923.)

Contrary to appellants' contention, the recent case of *People* v. *Chapman* (1975) 47 Cal.App.3d 597 [121 Cal.Rptr. 315] is readily distinguishable. In *Chapman* the prosecution was held to be barred from amending the information by charging an additional offense after the statute of limitations had run on the new offense charged in the amendment. The court held that since the amendment charged a new offense it did not relate back to the date of the original information. As we have indicated, no new offense was charged in the amendment in the case at bench. (See *People* v. *Kynette, supra,* 15 Cal.2d at p. 759; *Feagles* v. *Superior Court, supra,* 11 Cal.App.3d at p. 738; *People* v. *Cancimilla, supra,* 197 Cal.App.2d at p. 252.)

### TERRITORIAL JURISDICTION

Appellants argue that the Superior Court of Tulare County did not have territorial jurisdiction to try the alleged offense.

Conspiracy may be prosecuted and tried in the superior court of any county in which any overt act tending to effect such conspiracy may be done. (Pen. Code, §§ 182, 184; *People* v. *Jones* (1964) 228 Cal.App.2d 74, 86 [39 Cal.Rptr. 302]; *People* v. *Buono* (1961) 191 Cal.App.2d 203, 222-223 [12 Cal.Rptr. 604]; *People* v. *Anderson* (1949) 90 Cal.App.2d 326, 330-331 [202 P.2d 1044].) Under Penal Code section 781, where ". . . the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory." While it could be persuasively argued that under section 781 the consequences of the second alleged overt act in Los Angeles County

had such an effect in Tulare County, which was the situs of most of the real property in the estate, as to confer jurisdiction on the superior court of the latter county (*People* v. *Lewis* (1963) 222 Cal.App.2d 136, 147-148 [35 Cal.Rptr. 1]; *People* v. *Gerundo* (1952) 112 Cal.App.2d 863, 869 [247 P.2d 398]; *People* v. *Burton* (1949) 91 Cal.App.2d 695, 710 [205 P.2d 1065] (cert. den., 338 U.S. 886 [94 L.Ed. 544, 70 S.Ct. 187]); *People* v. *Megladdery, supra,* 40 Cal.App.2d at pp. 762, 774-777), we need not rest our decision upon that foundation.

The first overt act was alleged to have occurred in Tulare County. The evidence supported that allegation, and the jury found as a fact that the act had occurred there. ■ It is settled that territorial jurisdiction in a criminal case depends upon the acts committed rather than upon the form of the accusatory pleading (*People* v. *Powell* (1967) 67 Cal.2d 32, 62 [59 Cal.Rptr. 817, 429 P.2d 137]), and the question of territorial jurisdiction is a question of fact to be determined by the trier of fact (*People* v. *Jones, supra,* 228 Cal.App.2d at pp. 86-87; *People* v. *Megladdery, supra,* 40 Cal.App.2d at p. 762).

■ It is equally accepted that when the conspiracy charged is a continuing one and proof is made that one overt act in furtherance of the conspiracy occurred after the time before which the statute of limitations would be a bar, evidence of acts occurring before that time is admissible in evidence to show a conspiracy. (*Bompensiero* v. *Superior Court, supra,* 44 Cal.2d at pp. 184-185; *People* v. *Legerretta, supra,* 8 Cal.App.3d at p. 934; *People* v. *Mason* (1960) 184 Cal.App.2d 317, 368-369 [7 Cal.Rptr. 627] (cert. den., 366 U.S. 904 [6 L.Ed.2d 203, 81 S.Ct. 1046]).) ■ The logical conclusion to be drawn from the principles enunciated in these cases is that though an overt act may have occurred outside of the statute of limitations, such an overt act nevertheless can operate to establish territorial jurisdiction in the county where the overt act occurred. (See also *People* v. *Jones, supra,* 228 Cal.App.2d at pp. 86-88.) We conclude that territorial jurisdiction was properly established in Tulare County.

Effect OF DISMISSAL OF
FORGERY COUNT

■ On motion of appellants at the close of the prosecution's case, the court dismissed count I of the information, which charged appellants forged a will of Pearle P. Zalud in violation of Penal Code section 470. The dismissal was based upon the lack of a showing that the forgery took

place in Tulare County. Appellants contend that this dismissal at the close of the prosecution's case required the dismissal of the conspiracy count at that time, arguing that the forgery was the same and only substantive overt act charged in the conspiracy count at the time the prosecution rested its case. (*People* v. *Robinson* (1954) 43 Cal.2d 132, 138 [271 P.2d 865]; *In re Johnston* (1935) 3 Cal.2d 32, 34-36 [43 P.2d 541].) While there would be some merit to the argument if appellants' factual assumption were correct, analysis demonstrates that the single overt act forming the basis of the conspiracy count at the time the prosecution rested its case is dissimilar to the forgery. The overt act proven was predicated upon appellant Joe Witt's going to an office machine store in Porterville and causing the proprietress to type the Witt will and not upon the act of forgery itself. Where the overt act alleged in the conspiracy count is different from that constituting the substantive offense upon which a defendant is acquitted, the acquittal of the substantive offense does not operate as an acquittal of the conspiracy. (*People* v. *Robinson, supra,* 43 Cal.2d at p. 138.) Accordingly, appellants' contention must fail.

Moreover, in the case at bench, appellants were not acquitted for lack of proof that they committed the crime of forgery, the dismissal of the forgery count being based solely upon the failure to show that the offense occurred in Tulare County.

### Failure To State A Triable Offense

Appellants urge that their motion for judgment of acquittal at the close of the prosecution's case in chief should have been granted because as of that time the information alleged one overt act occurring on October 12, 1969, and that since Pearle Zalud did not die until February 7, 1970, there could be no conspiracy to defraud her estate or heirs before her death.

Procedurally, we again note that though a Penal Code section 1118.1 motion was made at the close of the prosecution's case, the only ground stated or argued to the trial judge by appellants in support thereof was that the court lacked territorial jurisdiction. At no time during the entire trial or posttrial proceedings was the ground now urged for the first time on appeal argued to the trial court, thereby depriving the prosecution of the opportunity to cure the alleged defect by amending the information to allege an additional overt act occurring after the death of Pearle Zalud. (See *Sommer* v. *Martin* (1921) 55 Cal.App. 603, 610 [204 P. 33].)

The alleged defect was, of course, eventually cured when the court permitted the filing of an amended information (albeit for a different purpose) during the closing days of the trial to allege the overt act which occurred in March 1971.

Failure to raise or argue a point in the trial court will preclude raising it for the first time on appeal. (*People* v. *Talley* (1967) 65 Cal.2d 830, 837-838 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Moore* (1970) 13 Cal.App.3d 424, 434, fn. 8 [91 Cal.Rptr. 538] (cert. den., 404 U.S. 880 [30 L.Ed.2d 161, 92 S.Ct. 214]).) While a failure to state a triable offense in the information is normally an exception to this rule, where the alleged deficiency is later cured by an amendment of the information, as here, fairness to appellants does not require and it would be inconsistent with the proper administration of justice to permit a reversal on appeal because the trial judge did not in the first instance divine the alleged defect and dismiss the action *sua sponte.*

Moreover, appellants' argument on its merits has little to commend it. Concededly, as of October 12, 1969, neither the beneficiaries of the estate nor the date of death of Pearle Zalud were known; however, since both the date of death and the establishment of the identity of the membership of the class of beneficiaries who would take upon her death were events certain to occur a provable conspiracy existed as of the date of the October 12, 1969, overt act. The conspiracy in substance was designed to defraud the estate when it was created and the beneficiaries thereof when their identities were fixed by decedent's death.

A conspiracy is an agreement the design and object of which is to do an unlawful act accompanied by an overt act to effect the object of the agreement (*People* v. *Munoz* (1961) 198 Cal.App.2d 649, 655 [18 Cal.Rptr. 82]); it is not necessary to show that the purpose or object of the conspiracy is accomplished. (*People* v. *Robinson, supra,* 43 Cal.2d 132, 140; 22 Cal.Jur.3d, Criminal Law, §§ 3152, 3164, pp. 309, 329.)[7]

Thus, in *United States* v. *Hood* (1952) 343 U.S. 148, 150-151 [96 L.Ed. 846, 848-849, 72 S.Ct. 568, 569-570], the court held that a conspiracy to violate a statute prohibiting sale of influence could be sustained though

---

[7]See *People* v. *Geibel* (1949) 93 Cal.App.2d 147, 164-166 [208 P.2d 743], which held that the substantive crime of forgery of a will is complete when the forged will is prepared and published with the intent to defraud, even though at the time the defendant is not benefited and it cannot be shown that any particular person was defrauded. It is sufficient if the forged instrument could possibly have that effect.

the statute be construed to punish sale of influence in connection with offices which had not been authorized by law but which might reasonably be expected to be established. Again, in *United States* v. *Perlstein* (3d Cir. 1942) 126 F.2d 789, 793-797 (cert. den., 316 U.S. 678 [86 L.Ed. 1752, 62 S.Ct. 1106]), the court held that persons could be guilty of conspiracy to obstruct justice though at the time no proceedings were pending in the federal district court and even though a person cannot be guilty of the substantive crime of obstruction of justice when no justice at that time was being administered. (Cf. *Ventimiglia* v. *United States* (4th Cir. 1957) 242 F.2d 620, 625; *O'Kelley* v. *United States* (8th Cir. 1941) 116 F.2d 966, 968.)

## CHANGE OF VENUE

■■■ Appellants' motion for a change of venue based upon alleged prejudicial pretrial publicity was denied. No pretrial challenge to that ruling was made in this court.

■■■ When pretrial publicity creates a reasonable likelihood that a fair trial cannot be had, the trial court should continue the case until the threat abates or transfer it to another county. (Pen. Code, § 1033; *Frazier* v. *Superior Court* (1971) 5 Cal.3d 287, 294 [95 Cal.Rptr. 798, 486 P.2d 694]; *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383 [66 Cal.Rptr. 724, 438 P.2d 372]; *People* v. *Whalen* (1973) 33 Cal.App.3d 710, 716 [109 Cal.Rptr. 282].) " 'Reasonable likelihood' of prejudice does not mean that prejudice must be 'more probable than not'." (*Griffin* v. *Superior Court* (1972) 26 Cal.App.3d 672, 680 [103 Cal.Rptr. 379].) ■■■ If the issue is raised on a petition for writ of mandate or after trial on appeal from a judgment of conviction, the reviewing court must make an independent evaluation of the circumstances and must satisfy itself de novo that defendant obtained a fair and impartial trial. (*People* v. *Welch* (1972) 8 Cal.3d 106, 113 [104 Cal.Rptr. 217, 501 P.2d 225]; *People* v. *Tidwell* (1970) 3 Cal.3d 62, 68-69 [89 Cal.Rptr. 44, 473 P.2d 748]; *Maine* v. *Superior Court, supra,* 68 Cal.2d at p. 384, fn. 9.)

The factors to be considered are: (1) the nature and gravity of the offense; (2) the size of the community; (3) the status of the defendant in the community; (4) the popularity and prominence of the victim; (5) the nature and extent of the news coverage. (*People* v. *Salas* (1972) 7 Cal.3d 812, 818 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832] (cert. den., 410 U.S. 939 [35 L.Ed.2d 605, 93 S.Ct. 1401]); *Fain* v. *Superior Court* (1970) 2 Cal.3d 46, 51-52 [84 Cal.Rptr. 135, 465 P.2d 23]; *Maine* v. *Superior Court,*

*supra,* 68 Cal.2d at pp. 385-387; *In re Miller* (1973) 33 Cal.App.3d 1005, 1011 [109 Cal.Rptr. 648].)

A significant and sometimes decisive difference between pretrial and posttrial review is that after the trial, in determining whether a defendant received a fair and impartial trial under the "reasonable likelihood" standard set forth in *Maine* v. *Superior Court, supra,* 68 Cal.2d 375, the review is retrospective and extends to an examination of what actually occurred at the trial. As was said in *People* v. *Quinlan* (1970) 8 Cal.App.3d 1063, 1070 [88 Cal.Rptr. 125]: "If a defendant elects the pretrial mandate alternative, he may well be in a position to urge that doubts be resolved in his favor. But if he elects to await trial and conviction before he seeks appellate review, he cannot complain if inferences of possible prejudice, available on a semi-silent record, have been refuted by the actualities of *voir dire* and of trial."

Each case must stand upon its own peculiar facts and circumstances. (*Fain* v. *Superior Court, supra,* 2 Cal.3d at p. 51; *Maine* v. *Superior Court, supra,* 68 Cal.2d at p. 388.)

The grounds for the motion herein were in essence that all citizens of Tulare County, and particularly those of the Catholic faith, were interested parties because they were direct and indirect beneficiaries of the formal will and because of the newspaper publicity "accentuating both the civil and criminal sides of the case." Various newspaper articles from The Bakersfield Californian, The Porterville Recorder and The Fresno Bee were mentioned in support of this contention, only seven of which are included in the record. The dates of the articles were from March 13, 1971, and ending December 2, 1972. Also presented was a statement that appellants would not receive a fair trial in Tulare County which was signed by 97 alleged Tulare County residents. There was also a mention of tape recordings of radio broadcasts which were allegedly prejudicial, but copies of the same are not included in the record.

The timing of the newspaper articles is of significance in weighing the possible prejudicial effect of the pretrial publicity. Keeping in mind that the date of the original civil proceeding in Los Angeles County was in March 1971 and that the trial herein was held commencing on October 23, 1973, at least 10 months transpired between the date of the last newspaper article and the commencement of the instant trial. It is self-evident that articles which may have been read by potential jurors 10

months or more before the trial scarcely could be described as fresh in their minds. (*People* v. *Langley* (1974) 41 Cal.App.3d 339, 351 [116 Cal.Rptr. 80]; *People* v. *Blake* (1971) 21 Cal.App.3d 211, 219 [98 Cal.Rptr. 409].)

Of the twelve jurors selected, only three indicated they had read anything about the case. Of the three, one said she had seen the headlines but had not read the article, and the other two stated they remembered nothing more than what they had heard in court on *voir dire.*

Appellants had 10 joint and 5 individual peremptory challenges each, or a total of 25. These were far from exhausted, only the ten joint and two of the individual challenges being used by them. (See *People* v. *Sommerhalder.* (1973) 9 Cal.3d 290, 303 [107 Cal.Rptr. 289, 508 P.2d 289].)

Further, the articles are all factual in nature. Unlike the situation in *Smith* v. *Superior Court* (1969) 276 Cal.App.2d 145 [80 Cal.Rptr. 693], press coverage in the instant case was restrained and certainly was not inflammatory. (See *People* v. *Hathcock* (1973) 8 Cal.3d 599, 619 [105 Cal.Rptr. 540, 504 P.2d 476].) There are present no political factors *(Smith* v. *Superior Court, supra),* nor public hysteria, nor public expression of prejudice such as public contribution of funds to aid the victim *(Maine* v. *Superior Court, supra),* nor demands for vigilante retaliation *(Frazier* v. *Superior Court, supra).* Nor is Tulare County, with a population in excess of 200,000, a small provincial county such as Mendocino County at the time *Maine* v. *Superior Court, supra,* was decided, or Lassen County when *People* v. *Tidwell, supra,* was decided. Nor were appellants strangers or newcomers to the community as was the case in *Maine* v. *Superior Court, supra, People* v. *Tidwell, supra,* and *Fain* v. *Superior Court, supra.* Furthermore, the instant case involves no such incredibly bestial or heinous crime as the senseless killing and rape of popular local teenagers as in *Maine* v. *Superior Court, supra,* and *Fain* v. *Superior Court, supra,* or a mass murder as in *Corona* v. *Superior Court* (1972) 24 Cal.App.3d 872 [101 Cal.Rptr. 411].

Independently reviewing all of the evidence bearing upon this issue in the totality of circumstances, it is clear to us that the publicity was not such as to create a reasonable likelihood that appellants could not be accorded a fair trial and that they in fact received a fair trial.

## Exclusion Of Evidence

Appellants contend that the court committed prejudicial error in excluding on hearsay grounds the testimony of one Carl Volz that police Lieutenant James Heusdens, who was investigating the matter for the People, threatened Lillian Volz, his wife, if she testified in favor of appellants. The argument is grounded solely upon the contention that the testimony would tend to show suppression of the evidence by the prosecution in violation of the principles established by such cases as *In re Ferguson* (1971) 5 Cal.3d 525, 532 [96 Cal.Rptr. 594, 487 P.2d 1234], *People* v. *Kiihoa* (1960) 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673], and *In re Newbern* (1959) 175 Cal.App.2d 862, 865 [1 Cal.Rptr. 80, 78 A.L.R.2d 901].

Appellants developed that Heusdens went to the Volz home and attempted to influence Mrs. Volz, who was Pearle Zalud's first cousin. When Carl Volz was asked what the nature of that influence was, the prosecution's objection on the ground of hearsay was sustained by the court. Appellants made the following offer of proof:

"We are offering the proof by this witness and other witnesses during the course of this defense testimony . . . that there is a violation of law in there with series of threats, interference with justice, threatening—

". . . I don't know that they were told, when a particular witness was told, if you testify and if we get a conviction on Mr. Witt we'll put you in jail for perjury.

". . . [A]ll we intend to show is that Mr. Heusden[s] did or tried to brow beat [*sic*] Mrs. Volz from the standpoint that she shouldn't testify for Joe Witt in this case."

Assuming the statements were not offered to prove the truth of the matters stated but solely to show the statements were made, they were not hearsay. (Evid. Code, § 1200; *People* v. *Spencer* (1969) 71 Cal.2d 933, 944 [80 Cal.Rptr. 99, 458 P.2d 43].) However, it does appear that other testimony was admitted tending to show the effort to influence Mrs. Volz.

Moreover, there was no suppression in fact since Mrs. Volz testified for appellants, rendering the cases relied upon by appellants inapplicable.

■ A second evidentiary argument is equally without merit. Leo White, a witness for appellants, testified that "several years ago" he received a telephone call from a woman identifying herself as Miss Zalud. An objection to a question inquiring as to what the woman said was sustained on hearsay grounds, as was an objection to a question asked as to why she wanted to talk with Joe Witt. Appellants made an offer of proof that if permitted to testify Mr. White ". . . would testify he did have a conversation from someone over the telephone on the date and time mentioned and that she identified herself by spelling her name and stating that the z is spelled with an s and spelled like salad. And he further would testify that she wanted to talk to Joe Witt and that Joe Witt had been taking her back and forth from wherever the area would be, and that she thought a lot of him. . . ." The offer was rejected.

First, it is noted that White did not know Pearle Zalud nor had he received any other calls from her. Thus, all that was before the court was evidence of an unauthenticated telephone call, the maker of which could not be independently identified, rendering the testimony objectionable on the ground of an insufficient foundation. (Evid. Code, § 403, subd. (a)(4); *People v. Collins* (1975) 44 Cal.App.3d 617, 628 [118 Cal.Rptr. 864].)

Secondly, whether Pearle Zalud was given rides to and from Porterville by appellant Joe Witt and whether Pearle Zalud "thought a lot" of appellant Joe Witt were key defense facts in attempting to rebut the prosecution's case that the Witt will was a forgery. Thus, the testimony of White as to the alleged statements made by Pearle Zalud clearly went to prove the truth of the matters stated and, unless within an exception to the hearsay rule, were inadmissible. (Evid. Code, § 1200.)

Appellants argue for the first time on appeal that the statements were admissible under the state of mind exception to the hearsay rule (Evid. Code, § 1250). However, appellants cannot raise this new ground for the first time in this court. (*Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 640 [108 Cal.Rptr. 585, 511 P.2d 33]; *People v. Miller* (1972) 7 Cal.3d 219, 227 [101 Cal.Rptr. 860, 496 P.2d 1228]; *People v. Thomas* (1970) 3 Cal.App.3d 859, 863-864 [83 Cal.Rptr. 879].) Assuming arguendo that we were inclined to make an exception to this well established rule, in view of the overwhelming evidence supporting guilt the exclusion of the

evidence, even if error, was nonprejudicial. *(People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243] (cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]).)

The judgments (orders granting probation) are affirmed.

Franson, J., and Thompson, J.,* concurred.

A petition for a rehearing was denied December 12, 1975, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied January 14, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.